[Cite as *Tsiperson v. Ohio Dept. of Commerce*, 2012-Ohio-1048.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96917**

## STANISLAV TSIPERSON

PLAINTIFF-APPELLEE

vs.

## OHIO DEPARTMENT OF COMMERCE DIVISION OF FINANCIAL INSTITUTIONS

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-547253

**BEFORE:** Celebrezze, P.J., Jones, J., and Cooney, J.

**RELEASED AND JOURNALIZED:** March 15, 2012

**ATTORNEYS FOR APPELLANT**

Michael DeWine
Ohio Attorney General
BY: James Evans
Senior Assistant Attorney General
Executive Agencies Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215

**ATTORNEY FOR APPELLEE**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio 44103

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant, the Ohio Department of Commerce, Division of Financial Institutions (the "Division"), seeks review of the common pleas court's decision to overturn the denial of Stanislav Tsiperson's application for a loan officer's license. After a thorough review of the record and law, we reverse the lower court's decision and reinstate the Division's denial of the license.

## I. Procedural and Factual History

{¶2} On September 4, 2003, Tsiperson applied for a state mortgage loan officer's license with the Division. The application, completed by Tsiperson, failed to list a 1999 conviction for disorderly conduct in response to a question regarding any prior criminal history. Tsiperson had checked the box for "No" regarding any past criminal history.

{¶3} After investigation, the Division found Tsiperson had a prior criminal conviction for disorderly conduct, a fourth-degree misdemeanor. On October 31, 2003, the Division sent notice to Tsiperson inquiring about his criminal history and requesting further information. Even though Tsiperson attempted to explain that he had simply forgotten about the conviction, the Division sent notice on January 23, 2004 that it was denying his request for a license.

**{¶4}** Tsiperson requested an administrative hearing, which was conducted on March 29, 2004. The hearing examiner found that the Division's decision was proper and affirmed the denial of a mortgage broker's license. It found specifically that Tsiperson had violated R.C. 1322.07(A), (B), and (C), by failing to disclose his conviction and making false statements in the application. The hearing examiner's recommendation was confirmed by the Division on November 3, 2004.

**{¶5}** Tsiperson then appealed that decision to the common pleas court, pursuant to his rights under R.C. 119.12. It is debated whether Tsiperson properly invoked the jurisdiction of the common pleas court by failing to file an original notice of appeal with the Division and a copy with the common pleas court, as the statute requires. The Division timely filed the record, and Tsiperson supplemented his notice of appeal after the time for filing such amendments had passed. The Division filed a motion to dismiss based on Tsiperson's alleged failure to properly file the notice of appeal. The common pleas court denied the motion and proceeded to review the decision of the Division.

**{¶6}** The common pleas court made its decision after considering the briefs of both parties and determined that the Division's decision to deny Tsiperson a license was not supported by competent, credible evidence. Specifically, the court found the ruling was "unlawful, unreasonable, and against the manifest weight of the evidence." The Division then appealed assigning five errors.

## II. Law and Analysis

### A. Jurisdiction of the Common Pleas Court

{¶7} The Division argues in its first two assignments of error[1] that Tsiperson did not properly invoke the jurisdiction of the common pleas court to review the agency's decision.

{¶8} In order to properly appeal from the decision of an administrative agency pursuant to former R.C. 119.12, a person was required to:

> [F]ile a notice of appeal with the agency setting forth the order appealed from and the grounds of the party's appeal. A copy of the notice of appeal shall also be filed by the appellant with the court. Unless otherwise provided by law relating to a particular agency, notices of appeal shall be filed within fifteen days after the mailing of the notice of the agency's order as provided in this section. For purposes of this paragraph, an order includes a determination appealed pursuant to division (C) of section 119.092 of the Revised Code.

{¶9} The Ohio Supreme Court interpreted this language to require that an original notice of appeal be filed with the agency and a copy be filed with the trial court. *Hughes v. Ohio Dept. of Commerce*, 114 Ohio St.3d 47, 2007-Ohio-2877, 868 N.E.2d 246, at paragraph two of the syllabus. It held that a party seeking review of an administrative decision must strictly comply with R.C. 119.12. The *Hughes* court determined that an

---

[1] These two assignments of error state:

I. "The lower court erred as a matter of law and abused its discretion in denying the Division's motion to dismiss for lack of subject matter jurisdiction as Tsiperson's notice of appeal failed to strictly comply with the 2004 R.C. 119.12 requirements as he filed a 'copy' of his notice of appeal with the Division and the 'original' with the lower court[;]"

II. "The lower court erred as a matter of law and abused its discretion by accepting jurisdiction over Tsiperson's attempted amendment to his notice of appeal that he filed beyond the R.C. 119.12 statutory fifteen day filing deadline."

agency must strictly comply with R.C. 119.09, and so, an appellant must also strictly comply with R.C. 119.12. As Justice Pfeifer pointed out in his concurring and dissenting opinion, the agency's duty to serve a certified copy of its decision on the other party serves an important function, while an appellant's duty to serve the original certified decision on the agency and a copy with the court serves no function other than to trip up the unwary. *Id.* at ¶ 22-23 (Pfeifer, J., concurring and dissenting.) The legislature ultimately agreed and amended R.C. 119.12 in 2010 to eliminate this requirement.

{¶10} On its face then, it would appear under *Hughes* that the trial court did not have jurisdiction over this case. But *Hughes* was not solely decided on the issue of filing the original versus a copy of the notice of appeal, and we find that fact significant. Specifically, in addition to the Division's contention that the common pleas court did not have jurisdiction over the director's (Hughes) appeal, the Ohio Supreme Court considered the director's contention that she was not served with a certified copy of the Department's order. The court agreed with *both* parties' contentions and stated:

> Here, since the agency failed to properly serve Hughes with a certified copy of the removal order, her appeal period never started to run. Once Hughes is properly served, she may perfect an appeal by filing the original notice of appeal with the agency and a copy of the notice with the court of common pleas. *Id.*

{¶11} Thus, the director in *Hughes* was not foreclosed from her appellate rights. We do not believe that Tsiperson should have been foreclosed from his appellate rights either. Indeed, the Ohio Supreme Court has consistently indicated that the purpose of a notice of appeal is to inform the opposing party of the taking of an appeal. *See Maritime*

*Mfrs., Inc. v. Hi-Skipper Marina*, 70 Ohio St.2d 257, 259, 436 N.E.2d 1034 (1982); *Wells v. Chrysler Corp.*, 15 Ohio St.3d 21, 24, 472 N.E.2d 331 (1984) (holding that the purpose of a notice of appeal is to set forth the names of the parties and to advise those parties that an appeal of a particular claim is forthcoming); *Couk v. Ocean Acc. & Guar. Corp.*, 138 Ohio St. 110, 116, 33 N.E.2d 9 (1941), quoting *Capital Loan & Sav. Co. v. Biery*, 134 Ohio St. 333, 339, 16 N.E.2d 450 (1938) ("the purpose of the notice of appeal is 'to apprise the opposite party of the taking of an appeal.' If this is done beyond danger of reasonable misunderstanding, the purpose of the notice of appeal is accomplished."). Tsiperson's filings complied with this purpose.

{¶12} The Division also argues that the court allowed modification of the notice of appeal after the statutory period for filing the notice had elapsed. While R.C. Chapter 119 contains no provision for the amendment of a notice of appeal, R.C. 2505.03(B) provides, in pertinent part:

> Unless, in the case of an administrative-related appeal, Chapter 119. or other sections of the Revised Code apply, such an appeal is governed by this chapter and, to the extent this chapter does not contain a relevant provision, the Rules of Appellate Procedure.

{¶13} R.C. Chapter 2505 contains two applicable provisions. R.C. 2505.04 provides that the only jurisdictional requirement necessary to perfect an appeal is the timely filing of the notice. R.C. 2505.05 allows a notice of appeal to be modified at the discretion of the court once the appeal has been timely perfected. These statutes provide an adequate basis for the common pleas court to grant a motion to amend.

{¶14} Addressing similar arguments, this court has held:

"Under R.C. 2505.04 the only jurisdictional requirement is the filing of the notice of appeal. R.C. 2505.05 then sets out what information must be designated in this notice of appeal. These, however, are not jurisdictional prerequisites and failure to comply with them does not defeat an appeal, as the notice of appeal may be amended 'for good cause shown' (R.C. 2505.05)." *Moore v. Cleveland Civ. Serv. Comm.*, 11 Ohio App.3d 273, 465 N.E.2d 482 (8th Dist.1983), quoting *Woods v. Cleveland Civ. Serv. Comm.*, 7 Ohio App.3d 304, 455 N.E.2d 709 (1983).

{¶15} Continuing, the court in *Moore* reaffirmed the proposition that procedures should be liberally construed so that cases are determined on their merits, and notice is sufficient if it substantially informs all parties of the appeal.

{¶16} The Division argues that Tsiperson's original notice of appeal failed to state the grounds on which the appeal was taken. R.C. 119.12 requires that such grounds be stated in the notice. For instance, a notice of appeal that a surveyor filed, which stated that he was "adversely affected" by the Board's order and sanctions imposed, was insufficient to invoke the jurisdiction of the reviewing court. *Green v. State Bd. of Regis. for Prof. Engrs. & Surveyors*, 2d Dist. No. 05CA121, 2006-Ohio-1581, 2006 WL 827374. The Second District held "[t]hat bare contention, coupled with only a reference to the statutory authority under which the Board acted, is insufficient to satisfy the 'grounds' requirement of R.C. 119.12." *Id.* at ¶ 14.

{¶17} Tsiperson's amended notice of appeal was not received until December 17, 2004. The 15-day period for filing his notice of appeal ended on November 18, 2004. The question becomes, did Tsiperson properly invoke the jurisdiction of the trial court with his original notice of appeal so that the court could allow amendment of the notice.

This is because "'compliance with the requirements as to the filing of the notice of appeal — the time of filing, the place of filing, and the content of the notice as specified in the statute — are all conditions precedent to jurisdiction.'" *Williams v. Drabik*, 115 Ohio App.3d 295, 296, 685 N.E.2d 293 (10th Dist.1996), quoting *Zier v. Bur. of Unemp. Comp.*, 151 Ohio St. 123, 127, 84 N.E.2d 746 (1949).

{¶18} R.C. 119.12 requires a party to "file a notice of appeal with the agency setting forth the order appealed from and *stating that the agency's order is not supported by reliable, probative, and substantial evidence and is not in accordance with law*." (Emphasis added.)  The Tenth District has also stated that

> R.C. 119.12 requires that the notice of appeal not only set forth the order appealed from, but also set forth "the grounds of the party's appeal."  The requirement that the grounds of the appeal be identified puts the agency on notice of the claim or claims against which it must defend.  [*Green* at ¶ 13].  A notice of appeal that fails to set forth the grounds of the party's appeal is jurisdictionally defective. *Zier, supra.  Berus v. Ohio Dept. of Admin. Servs.*, Franklin App. No. 04AP-1196, 2005-Ohio-3384, 2005 WL 1532400, at ¶12-13.  *CHS-Windsor, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 05AP-909, 2006-Ohio-2446, 2006 WL 1351550, ¶ 9.

{¶19} The grounds listed in the original notice filed on November 9, 2004 included: (1) improper and prejudicial cross-examination related to Insan America, Inc. ("Insan") [2] ; (2) the findings related to Insan were unsupported by evidence; (3) questioning about a juvenile DUI; (4) the findings of fact and conclusions of law were against the manifest weight of the evidence; (5) the denial of application was an abuse of

---

[2] A corporation whose articles of incorporation list appellant's name and address as incorporator.

discretion; and (6) other reasons that may be presented once the record is filed. Tsiperson then amended the notice of appeal in December to replace Item 6 from the above list with "[t]he denial of [Tsiperson's] loan officers license application was not based upon reliable, probative, and substantial evidence and is contrary to law."

**{¶20}** In *Zier*, 151 Ohio St. 123, 84 N.E.2d 746, the Ohio Supreme Court recognized that the section of the General Code authorizing an appeal to the common pleas court required the appellant's notice of appeal to "set forth the errors" in the order appealed from. No specific language was required at the time, so long as the agency was apprised of the alleged errors in law or fact that were the grounds for the appeal. *See Green,* 2d Dist No. 05CA121, 2006-Ohio-1581. "To state or set forth grounds means to recite some basis in law or fact for a claim." *Id*. at ¶ 13.

**{¶21}** Here, Tsiperson's notice of appeal sets forth the grounds for the appeal and gives the Division notice of the errors he is alleging. Both of the Division's jurisdictional arguments fail. The first two assignments of error are overruled.

### B. The Trial Court's Reversal of the Division's Decision

**{¶22}** The Division's third, fourth, and fifth assignments of error[3] all take issue

with the common pleas court's decision.

> When the trial court reviews an order of an administrative agency, the court must consider the entire record to determine whether the order is supported by reliable, probative and substantial evidence and is in accordance with law. *Yaghmaee v. Ohio State Chiropractic Board*, Franklin App. No. 04-AP-302, 2004-Ohio-302, citing *Lies v. Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207. The appellate court's review is more limited; this court determines only if the trial court has abused its discretion. *Pons v. Ohio State Medical Bd.*, 66 Ohio St.3d 619, 1993-Ohio-122. *Bellante v. Ohio Dept. of Commerce Dept. of Fin. Insts.*, 8th Dist. No. 86712, 2006-Ohio-2472, 2006 WL 1360807, ¶24.

**{¶23}** The standard of review that a common pleas court applies in an appeal under

R.C. 119.12 is set forth in that section:

> The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

---

[3] These assignments of error state:

III. "The lower court erred as a matter of law and abused its discretion in reversing the Division's final adjudication order denying Tsiperson's loan officer's license application and in ruling that the Division's order was 'unlawful, unreasonable, and against the manifest weight of the evidence'[;]

IV. "The lower court erred as a matter of law and abused its discretion by substituting its judgment for that of the Division's[;]

V. "The lower court applied an improper standard of review in reversing the Division's final adjudication order denying Tsiperson's loan officer license application."

**{¶24}** Here, Tsiperson was found to have committed violations of R.C. 1322.07(A), (B), and (C), which state:

No registrant * * * shall do any of the following: (A) Obtain a mortgage broker certificate of registration or loan originator license through any false or fraudulent representation of a material fact or any omission of a material fact required by state law, or make any substantial misrepresentation in any registration or license application; (B) Make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations; (C) Engage in conduct that constitutes improper, fraudulent, or dishonest dealings * * *.

**{¶25}** In *Bellante*, this court held:

The record reflects the agency's decision to deny Bellante's application was supported by the evidence. Bellante admitted he answered "No" to the Loan Application's Question 5. He further admitted that, despite this answer, he had been convicted in 1998 in the Lyndhurst Municipal Court of three separate misdemeanor offenses. His answer, therefore, was false. *Id.* at ¶25.

**{¶26}** No evidence of intentional deceit or fraud is necessary given the clear instructions accompanying the questions and the duty to answer the questions fully and truthfully. This view is shared by the Tenth District, evident from its holding in *Hockenberry v. Ohio Dept. of Commerce,* 173 Ohio App.3d 331, 2007-Ohio-5555, 878 N.E.2d 662, ¶11 (10th Dist.). There, it stated:

Appellant argues that the trial court applied the wrong portions of R.C. 1322.07(A) and (B) in holding that these provisions require a finding of intentional dishonesty. [The Division] points out that the applicable portion of R.C. 1322.07(A) requires only a "substantial misrepresentation in any registration or license application" — not an intentionally false or fraudulent misrepresentation. Likewise, [the Division] notes that R.C. 1322.07(B) also prohibits "omissions of statements required by state law," a

prohibition that would include the failure to disclose a conviction as required by state law.

**{¶27}** Tsiperson failed to answer Question 5 truthfully when he failed to include his disorderly conduct conviction on his application. While the disorderly conduct conviction probably would not prevent him from obtaining a license, as the Division hearing officer acknowledged, Tsiperson's failure to disclose constitutes a dishonest act that does create an issue about his character and ability to serve in a position of trust.

**{¶28}** Tsiperson admitted that he took only five minutes to fill out this important document. The prior conviction was not something that occurred decades earlier. His disorderly conduct conviction occurred in 1999, and he applied for his mortgage license in 2003. The Division was reasonable in finding that this four- to five-year-old conviction should have been disclosed if Tsiperson honestly and thoroughly completed his application. The failure to do so constituted a violation of R.C. 1322.07(A), (B), and (C). That is sufficient evidence to support a decision to deny Tsiperson a license.

**{¶29}** Tsiperson argues that the trial court properly found the Division's judgment was not supported by competent, credible evidence because the Division's attorney introduced non-probative matters by way of ambush. However, when determining an applicant's character and fitness, the Division is required by regulation to consider whether the applicant:

> (A) Has been found guilty in any court of competent jurisdiction of any felony; (B) Has been found guilty in any court of competent jurisdiction of any misdemeanor involving any theft offense, deception, moral turpitude, or any offense listed in division (A)(8) of section 1322.03 and division (A)(2) of section 1322.031 of the Revised Code; * * * (I) Has a record or pattern

of disregard of the laws of this state, another state, or the United States * * * . Ohio Admin. Code 1301:8-7-21.

{¶30} Here, the inquiry into Tsiperson's juvenile record could reasonably be used to rebut his testimony during direct examination. Evid.R. 405(A). During direct examination, Tsiperson read from his letter written to the Division, in which he stated that he had "only limited experience with the courts." Tsiperson's assertion that he did not disclose his misdemeanor conviction because of his inexperience with the courts opened the door for the Division to show that this conviction was not the first time Tsiperson had encountered the justice system. *See State v. Robinson*, 98 Ohio App.3d 560, 649 N.E.2d 18 (8th Dist.1994). Also, the Division did not raise the issue of a juvenile adjudication. A question was put to Tsiperson specifically about convictions since his 1998 misdemeanor conviction, and Tsiperson volunteered the information about a juvenile DUI adjudication from that year.

{¶31} Finally, the Division hearing officer did not rely on appellant's juvenile adjudication in making a decision. The hearing officer stated that appellant had "a single conviction approximately five years before the hearing * * *" and did not reference the juvenile adjudication as a reason for the decision to deny Tsiperson's application.

{¶32} Inquiry into the business dealings of Insan, a corporation chartered by a person with Tsiperson's name and address, is also a valid line of inquiry. Tsiperson would have precluded the Division from asking about this, but, on the face of the documents, it appeared Tsiperson was involved in this business, and the business did not file tax returns in years during which it was conducting business. The Division could

validly inquire into the nature of the business, according to Ohio Admin. Code 1301:8-7-21(G), which includes as a factor having engaged

> in any conduct which would reflect on the reputation for honesty, integrity or competence in business and personal dealings of the applicant, registrant or licensee, including but not limited to the failure to provide complete and accurate information concerning the applicant's, registrant's or licensee's past[.]

{¶33} Tsiperson argues the Division did not produce a handwriting expert or other evidence that he signed as an incorporator and statutory agent of Insan. Tsiperson further argues that a comparison of the signature on these documents with his own obviously indicates a different person signed them. However, the signature on his 2000 tax return and the 1999 document filed with the Secretary of State is not so obviously different, even though Tsiperson's signature on the other documents in this case dating from 2003 onward do appear to be obviously different.

{¶34} These are areas of valid consideration as they can be considered in determining whether the "[t]he applicant's financial responsibility, character, and general fitness command the confidence of the public and warrant the belief that the business will be operated honestly and fairly* * *." R.C. 1322.041(A)(6).

{¶35} The hearing officer ultimately found that "failure to disclose a conviction on the Application is, in the eyes of the Division, a violation of Section 1322.07(A), (B), and (C)." That decision is supported by substantial, reliable evidence in the record. The hearing officer went on to find the fact that Tsiperson's name and address appear on the articles of incorporation as a statutory agent and incorporator was of concern. In the face

of conflicting evidence and testimony, the hearing officer was free to believe or disbelieve Tsiperson's explanation as to why this information was not disclosed. That is a credibility determination best left to the hearing officer, not the common pleas court on appeal. Further, the hearing officer only referenced this matter in its decision, finding the situation to be of concern.

{¶36} The hearing officer's main reason for denying the application was Tsiperson's failure to disclose a prior criminal conviction. That decision is supported by reliable, substantial evidence, and the common pleas court erred in reversing a properly supported decision.

## III. CONCLUSION

{¶37} Tsiperson appears to be an honest and hard-working individual attempting to better himself. However, the Division produced evidence of his failure to disclose his 1999 conviction, and that is sufficient reliable, substantial evidence to support its decision to deny him a license. The decision of the lower court must be reversed.

{¶38} This cause is reversed, and judgment is entered for the Division consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., CONCURS;
LARRY A. JONES, SR., J., DISSENTS (with separate opinion)

LARRY A. JONES, SR., J., DISSENTING:

**{¶39}** I concur with the majority's resolution of the first and second assignments of error, but I respectfully dissent from the majority's decision on the remaining assignments of error, and would affirm the trial court's decision in toto.

**{¶40}** As the majority opinion correctly states, appellate review of an administrative agency's order is more limited than a trial court's review. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264 (1988). It is incumbent on a trial court to examine the evidence. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 1993-Ohio-122, 614 N.E.2d 748. Such is not the charge of an appellate court. *Id.* Instead, an appellate court must determine whether the trial court has abused its discretion. *Id.* Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. *Id.*

**{¶41}** The trial court characterized Tsiperson's failure to disclose his disorderly conviction as "reasonably explained," noting that it was a misdemeanor offense that occurred when Tsiperson was a "young adult." The trial court found that the hearing

officer "inappropriately allowed inadmissible and non-probative evidence to elevate [Tsiperson's] failure to report an otherwise minor youthful transgression of law into something that has a disproportionately improper effect."

{¶42} Specifically, the trial court found that the hearing officer inappropriately relied on two other non-disclosures by Tsiperson: (1) a DUI adjudication when Tsiperson was 17 years old and (2) articles of incorporation bearing Tsiperson's name.

{¶43} In regard to the DUI adjudication, the trial court found that it should have been given "no weight." Specifically, the court found that the adjudication did not constitute a "reportable 'criminal conviction.'" The majority finds that the "hearing officer did not rely on [Tsiperson's] juvenile adjudication in making its decision." I am not persuaded. The hearing officer, in his "discussion" section of his findings of fact and conclusions of law, stated that Tsiperson "also acknowledges that he had a conviction for driving under the influence in 1998." The hearing officer did not mention the juvenile adjudication in the concluding paragraph of his discussion section. Thus, it may appear at first blush that the hearing officer did not give any weight to the adjudication. But a review of the transcript suggests otherwise. Specifically, Tsiperson's counsel twice objected to the line of questioning — first on the grounds that the application excluded traffic matters and second because it was a juvenile offense. The hearing officer overruled the objections, stating "I think the credibility of [Tsiperson] is at issue here and if [opposing counsel] wants to inquire about other matters, I am going to give him some latitude to do that within reasonable boundaries."

{¶44} In *In re Agler*, 19 Ohio St. 70, 249 N.E.2d 808 (1969), the Ohio Supreme Court addressed the issue of whether a juvenile case results in an adjudication or conviction and concluded that the result was adjudication. The Court reasoned as follows:

> The Juvenile Court stands as a monument to the enlightened conviction that wayward boys may become good men and that society should make every effort to avoid their being attainted as criminal before growing to the full measure of adult responsibility. Its existence, together with the substantive provisions of the Juvenile Code, reflects the considered opinion of society that childish pranks and other youthful indiscretions, as well as graver offenses, should seldom warrant adult sanctions and that the decided emphasis should be upon individual, corrective treatment. *Id*. at 71.

{¶45} The Court further stated that "a child is not a criminal by reason of any Juvenile Court adjudication, and civil disabilities ordinarily following conviction do not attach." *Id*. at 73.

{¶46} In light of the above, the hearing officer should not have allowed testimony about the juvenile offense, and the trial court did not abuse its discretion by finding that the hearing officer should have given "no weight" to Tsiperson's juvenile adjudication.

{¶47} In regard to the articles of incorporation, the record demonstrates that on cross-examination, Tsiperson was shown a copy of articles of incorporation bearing his name filed in November 2000 with the Ohio Secretary of State. The articles were filed as part of the process of forming a new corporation named Insan American Inc. The address listed on the articles was Tsiperson's address. Tsiperson denied signing the articles or being involved with the corporation in any capacity. He testified that he

believed his father, who was residing with him at the time and whom he was supporting, used his name.

{¶48} In his concluding paragraph of his discussion section, the hearing officer stated the following:

> [t]he Hearing Officer is concerned that [Tsiperson's] name appears on the Articles of Organization filed with the Ohio Secretary of State that [Tsiperson] denies having signed. [Tsiperson] likewise denies that the individual whose name also appears on the Articles of Incorporation is a business partner. Yet, those Articles reflect an address that was [Tsiperson's] address.

{¶49} The trial court found the hearing officer's reliance on that evidence "troubling." The court noted that, although the inquiry into the issue "may have been relevant for purposes of establishing businesses or enterprises with which [Tsiperson] may have been associated," Tsiperson "vigorously denied he had anything to do with the preparation and/or filing of the Articles of Incorporation or the business in question." The trial court noted that Tsiperson "offered a reasonable explanation and a defensible position," that being, that his father, who lived with him and was attempting to start an import-export business, may have used his name without his permission. The trial court further noted that the Division did not offer any evidence to the contrary in rebuttal. On this record, the trial court found that the evidence lacked any probative value and should not have been given any weight whatsoever.

{¶50} To a limited extent, a trial court is permitted to substitute its judgment for that of an administrative agency. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980). I would find that the trial court did not abuse its discretion by

substituting its judgment in regard to the articles of incorporation for that of the Division. The articles were filed with the secretary of state in 2000; the first time they were presented in this case, without notice to Tsiperson and his counsel, was at the March 2004 hearing. The Division's decision to deny Tsiperson's application was based on two specific findings that Tsiperson: (1) swore under oath that he had never been convicted of any criminal offense, when in fact, he had; and (2) therefore; had provided untruthful information regarding his criminal history. The articles of incorporation were not a factor in the Division's denial of Tsiperson's application and, therefore, the trial court's determination that it should not have been afforded any weight was not an abuse of discretion.

{¶51} In my opinion, what was left then, as the trial court stated, was solely the disorderly conduct conviction. The Division and majority rely on this court's decision in *Bellante v. Ohio Dept. of Commerce, Dept. of Fin. Insts.*, 8th Dist. No. 86712, 2006-Ohio-2472, 2006 WL 1360807, in support of reversing the trial court's judgment. I believe this case is distinguishable from *Bellante*.

{¶52} In *Bellante*, the applicant applied for a loan officer's license, but failed to report that he had three prior misdemeanor convictions. The Division denied his application because of the misreporting. At the hearing before the Division, the applicant testified that he did not report the convictions because he believed that they had been expunged. The hearing officer recommended the denial of the application and the

Division followed the recommendation. The applicant appealed to the common pleas court and the court reversed the Division's decision.

{¶53} This court reversed the trial court, finding that the evidence demonstrated that the applicant's omission was not merely negligent. This court cited the clear instructions on the application and the testimony of the applicant that he had looked into the law regarding expungement and learned that he was "allowed one." This court found that, "[s]ince he had three convictions that related to two separate incidents, he thereby implicitly acknowledged his answer to Question 5 consciously was dishonest." *Id*. at ¶ 27.

{¶54} Here, Tsiperson only had one prior conviction upon which his application was denied. I believe that there was evidence to support his contention that his omission was negligent and, therefore, that the trial court did not abuse its discretion in reversing the Division's decision.

{¶55} In sum, to concur with the majority that the trial court abused its discretion, I would have to find that the trial court's decision was "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp*., 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). I do not find that and, therefore, I dissent as to the majority's decision reversing the trial court's judgment.